IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NECTAR COLLECTOR COLORADO, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 20-cv-325 |

## COMPLAINT

Plaintiff Nectar Collector Colorado, LLC ("Nectar Collector" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, ecommerce Internet stores operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating ecommerce Internet stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States,

including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Nectar Collector's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Nectar Collector substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Nectar Collector to combat ecommerce Internet Store operators who trade upon Nectar Collector's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Nectar Collector's federally registered trademarks (collectively, the "Counterfeit Products"). Defendants create ecommerce Internet stores operating under one or more Seller Aliases advertising, offering for sale and selling Counterfeit Products to unknowing consumers. Ecommerce Internet stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Nectar Collector is forced to file this action to combat Defendants' counterfeiting of the registered Nectar Collector trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Nectar Collector has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff is a limited liability company organized and existing under the laws of Colorado with its principal place of business in Northglenn, Colorado.

5. Founded in 2013, at the advent of the dabbing revolution, Nectar Collector is an industry-leading designer, manufacturer, distributor, and seller of vaporizers, pipes, and other concentrate gear and accessories. As creators of the concentrate genre, particularly with regard to portable vaporizers and concentrate accessories, Nectar Collector is known for its cutting-edge designs and unmatched quality.

6. Nectar Collector designs, manufactures, and sells many high-quality concentrate products, including, but not limited to, vaporizers, pipes, concentrate accessories, kits, and other concentrate gear and swag (these and other genuine Nectar Collector branded products are collectively referred to herein as the "Nectar Collector Products"). Nectar Collector's finely crafted vaporizers and fashion accessories provide concentrate enthusiasts with an innovatively simple and portable vaporizing experience highlighted by a unique touch of sparkle, glamour, and elegance. Each of Nectar Collector's eye-catching designs is infused with technical expertise and a passion for detail that has characterized the brand since its inception.

7. Nectar Collector Products have become enormously popular and even iconic, driven by Nectar Collector's arduous quality standards and innovative design. Among the purchasing public, genuine Nectar Collector Products are instantly recognizable as such. In the United States and around the world, the Nectar Collector brand has come to symbolize high quality, and Nectar Collector Products are among the most recognizable for vaporizers, pipes, and other concentrate gear and accessories.

8. Nectar Collector Products are distributed and sold to consumers through retailers throughout the United States, including through smoke shops and other authorized retailers in Illinois. Nectar Collector Products can also be purchased through authorized online retailers and via the official NectarCollector.org website. Providing genuine Nectar Collector branded retail store services over the Internet to sell genuine Nectar Collector Products is an important part of Nectar Collector's business strategy. Since 2013, Nectar Collector has operated a website at NectarCollector.org where it promotes and sells genuine Nectar Collector Products. The NectarCollector.org website features proprietary content, images and designs exclusive to Nectar Collector. Moreover, Nectar Collector utilizes an affiliate program to sell genuine Nectar Collector Products through affiliated websites, which is a significant part of Nectar Collector's business strategy and model.

9. Nectar Collector incorporates a variety of distinctive marks in its various Nectar Collector Products. Nectar Collector has registered its trademarks with the United States Patent and Trademark Office. Nectar Collector Products typically include at least one of Nectar Collector's registered trademarks. Nectar Collector uses the NECTAR COLLECTOR Trademarks in connection with the marketing of its Nectar Collector Products, including the following marks which are collectively referred to as the "NECTAR COLLECTOR Trademarks."

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,467,713 | NECTAR COLLECTOR | For: Smoking pipes; and essential oil vaporizer pipes in class 034. |
| 4,919,359 | HONEYBIRD | For: Essential oil vaporizer pipes in class 034. |

| 4,803,290 | [logo] | For: Smoking pipes; and essential oil vaporizer pipes in class 034. |
|---|---|---|

10. The above U.S. registrations for the NECTAR COLLECTOR Trademarks are valid, subsisting, in full force and effect, and U.S. Reg. No. 4,467,713 is incontestable pursuant to 15 U.S.C. § 1065. The registrations for the NECTAR COLLECTOR Trademarks constitute *prima facie* evidence of their validity and of Nectar Collector's exclusive right to use the NECTAR COLLECTOR Trademarks pursuant to 15 U.S.C. § 1057(b). The NECTAR COLLECTOR Trademarks have been used exclusively and continuously by Nectar Collector for many years and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed NECTAR COLLECTOR Trademarks are attached hereto as **Exhibit 1.**

11. The NECTAR COLLECTOR Trademarks are exclusive to Nectar Collector, and are displayed extensively on or in close connection with Nectar Collector Products, Nectar Collector packaging, and in Nectar Collector's marketing and promotional materials. Nectar Collector Products have become popular around the world and have been extensively promoted and advertised at great expense. Nectar Collector Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as the industry leader in portable vaporizing technology. Because of these and other factors, the Nectar Collector name and the NECTAR COLLECTOR Trademarks have become famous throughout the United States.

12. The NECTAR COLLECTOR Trademarks are distinctive when applied to the Nectar Collector Products and packaging, signifying to the purchaser that the products come from

Nectar Collector and are manufactured to Nectar Collector's quality standards. Whether Nectar Collector manufactures the products itself or contracts with others to do so, Nectar Collector has ensured that products bearing or sold within packaging bearing the NECTAR COLLECTOR Trademarks are manufactured to the highest quality standards. The NECTAR COLLECTOR Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the NECTAR COLLECTOR Trademarks is of incalculable and inestimable value to Nectar Collector.

13. Nectar Collector has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the NECTAR COLLECTOR Trademarks. As a result, products bearing the NECTAR COLLECTOR Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Nectar Collector. The widespread fame, outstanding reputation, and significant goodwill associated with the Nectar Collector brand have made the NECTAR COLLECTOR Trademarks invaluable assets of Nectar Collector.

**The Defendants**

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the ecommerce Internet stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Nectar Collector. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants either individually or jointly own and/or operate one or more ecommerce Internet stores under the Seller Aliases listed in Schedule A

attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Nectar Collector to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Nectar Collector will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The success of the Nectar Collector brand has resulted in its significant counterfeiting. Consequently, Nectar Collector has a worldwide anti-counterfeiting program and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Nectar Collector has identified many fully interactive ecommerce Internet stores on online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the ecommerce Internet stores operating under Seller Aliases. The ecommerce Internet stores operating under Seller Aliases are offering for sale and selling Counterfeit Products to consumers in this Judicial District and throughout the United States. Ecommerce sales, including ecommerce Internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

17. Marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, NW. J. INT'L L. & BUS. (forthcoming 2020), at 24. Further, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 25.

18. Defendants have targeted sales from Illinois residents by setting up and operating ecommerce Internet stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

19. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing ecommerce Internet stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Ecommerce Internet stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. Ecommerce Internet stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Nectar Collector has not licensed or authorized Defendants to use any of its NECTAR COLLECTOR Trademarks, and none of the Defendants are authorized retailers of genuine Nectar Collector Products.

20. Many Defendants also deceive unknowing consumers by using the NECTAR COLLECTOR Trademarks without authorization within the content, text, and/or meta tags of their

online marketplace listings in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Nectar Collector Products. Other ecommerce Internet stores operating under Seller Aliases omit using the NECTAR COLLECTOR Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Nectar Collector Products.

21. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based ecommerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent one from learning their true identities and the scope of their ecommerce operation.

22. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23. Even though Defendants operate under multiple fictitious aliases, the ecommerce Internet stores operating under the Seller Aliases share unique identifiers, such as design elements, similarities of the price, description of the goods offered for sale, and of the Counterfeit Products themselves offered for sale. For example, ecommerce Internet stores operating under the Seller Aliases include notable common features, including use of the same accepted payment methods, check-out methods, meta data, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, and the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar

irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

24. On information and belief, Defendants use templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.

25. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Further, counterfeiters such as Defendants typically operate multiple payment accounts so that they can continue operation in spite of Nectar Collector's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Nectar Collector. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

27. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using infringing and counterfeit versions of the NECTAR COLLECTOR Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Nectar Collector, have jointly and severally,

knowingly and willfully used and continue to use the NECTAR COLLECTOR Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use of the NECTAR COLLECTOR Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Nectar Collector.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Nectar Collector hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered NECTAR COLLECTOR Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The NECTAR COLLECTOR Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the Nectar Collector Products offered, sold or marketed under the NECTAR COLLECTOR Trademarks.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the NECTAR COLLECTOR Trademarks without Nectar Collector's permission.

32. Nectar Collector is the exclusive owner of the NECTAR COLLECTOR Trademarks. The United States Registrations for the NECTAR COLLECTOR Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge

11

of Nectar Collector's rights in the NECTAR COLLECTOR Trademarks, and are willfully infringing and intentionally using counterfeits of the NECTAR COLLECTOR Trademarks. Defendants' willful, intentional and unauthorized use of the NECTAR COLLECTOR Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Nectar Collector has no adequate remedy at law, and if Defendants' actions are not enjoined, Nectar Collector will continue to suffer irreparable harm to its reputation and the goodwill of its well-known NECTAR COLLECTOR Trademarks.

35. The injuries and damages sustained by Nectar Collector have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. Nectar Collector hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Nectar Collector or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Nectar Collector.

38. By using the NECTAR COLLECTOR Trademarks on the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

39. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40. Nectar Collector has no adequate remedy at law and, if Defendants' actions are not enjoined, Nectar Collector will continue to suffer irreparable harm to its reputation and the goodwill of the Nectar Collector brand.

## PRAYER FOR RELIEF

WHEREFORE, Nectar Collector prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the NECTAR COLLECTOR Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Nectar Collector Product or is not authorized by Nectar Collector to be sold in connection with the NECTAR COLLECTOR Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Nectar Collector Product or any other product produced by Nectar Collector that is not Nectar Collector's or not produced under the authorization, control, or supervision of Nectar Collector and approved by Nectar Collector for sale under the NECTAR COLLECTOR Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of

        Nectar Collector, or are sponsored by, approved by, or otherwise connected with Nectar Collector;

    d. further infringing the NECTAR COLLECTOR Trademarks and damaging Nectar Collector's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Nectar Collector, nor authorized by Nectar Collector to be sold or offered for sale, and which bear any of Nectar Collector's trademarks, including the NECTAR COLLECTOR Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Nectar Collector's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the NECTAR COLLECTOR Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the NECTAR COLLECTOR Trademarks; and

    c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

3) That Defendants account for and pay to Nectar Collector all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the NECTAR COLLECTOR Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Nectar Collector be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the NECTAR COLLECTOR Trademarks;

5) That Nectar Collector be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 15th day of January 2020.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law

*Counsel for Plaintiff Nectar Collector Colorado, LLC*